IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

THERESA KUTZLEY,

    PLAINTIFF,

v.                                                   CASE NO.: CV-01-J-745-J

BUCCANEER HOMES, INC., and
RAY HARPER,

    DEFENDANTS.

## MEMORANDUM OPINION

This cause comes before the court on the defendants' motions for summary judgment (docs. 18 & 20) and evidence in support of said motions, the plaintiff's response and evidence in opposition to the motions and the defendants' replies. The court has considered all of the pleadings, brief and evidence submitted in support of and in opposition to the motions in the light most favorable to the plaintiff.

The plaintiff brought suit under Title VII, 42 U.S.C. § 2000e, *et seq,* for hostile environment; disparate treatment and retaliation; the Age Discrimination in Employment Act, the Alabama Age Discrimination Act, and the state law claims of assault, battery, invasion of privacy, outrage, and negligent hiring, training, supervision and retention. The plaintiff then voluntarily dismissed her claims for Title VII disparate treatment (Count II); violations of the ADEA (Count III); violations of the AADA (Count IV); invasion of privacy (Count VIII) and outrage (Count IX). Thus, the court considered the evidence solely as it relates to the plaintiff's claims for Title VII hostile environment (Count I); Title VII

retaliation (Count V); assault and battery against defendant Harper (Counts VI and VII); and negligent hiring, training, supervision and retention against defendant Buccaneer (Count X).

## Factual Background

The plaintiff began working for Buccaneer Homes as support staff in the accounts payable department on May 14, 1997. Gilliland depo. at 12, 19. At the time, Buccaneer operated three plants, Plant 1 in Hamilton, Alabama, and Plants 2 and 3 in Winfield, Alabama. Harper depo. at 31. The plaintiff worked solely in Plant 1. Defendant Harper was supervisor of the fabrication/maintenance shop, located in Plant 3. Plaintiff depo. at 186; Miller depo. at 17. However, his job duties required him to be at all three plants. Gilliland depo. at 43; Harper depo. at 42, 44. Part of plaintiff's job duties included paying the bills from the fabrication shop. Plaintiff depo. at 187. In February, 2000, Plant 2 was closed. This closure necessitated reducing the office staff by one. Affidavit of Gilliland at ¶ 5. Tammy Pennington voluntarily resigned.[1] Declaration of Nix, submitted as exhibit 8 to Gilliland depo. at ¶ 14.

In March, 2000, the plaintiff received a promotion and a raise because she assumed portions of Ms. Pennington's duties, including vendor payables for Plants 2 and 3. Plaintiff depo. at 197, 283. In June, 2000, Plant 3 was closed. Gilliland depo. at 92; affidavit of Gilliland at ¶ 5, declaration of Nix at ¶ 14. The plaintiff received notice that she would be laid off due to this closure. Affidavit of Gilliland at ¶ 6. The plaintiff was not surprised by

---

[1] Prior to Pennington's resignation, Jane Barre handled accounts payable for Plant 1, Pennington handled accounts payable for Plants 2 and 3, and plaintiff did miscellaneous accounts payables, production relief, punched in purchase orders and handled inventory cards when inventory was done. Miller depo. at 12; plaintiff depo. at 156-157.

this, because she had heard talk. Plaintiff depo. at 287. She was laid off on August 3, 2000, pursuant to a layoff policy adopted in the spring of 2000. Gilliland depo. at 89. The plaintiff states that eventually, this closure would have reduced her workload by 40-50 percent. Plaintiff depo. at 285. Employees with longer tenure than hers were laid off as well. *Id.* at 285-286.

The plaintiff alleges that she was physically touched inappropriately by Ray Harper, talked to like she did not have "good common sense," and treated "indifferent." Plaintiff depo. at 167-169.

As to her complaints of inappropriate touching, the plaintiff stated that in the spring of 1998, Harper came up behind her, grabbed her underneath her breasts and pulled her back in her chair. Plaintiff depo. at 170, 173. No one else saw this incident. *Id.* at 171. The plaintiff reported the incident to Ronnie Miller, the assistant controller. Miller depo. at 10, 18-19; plaintiff depo. at 174-175. All Miller remembers about the incident is that the plaintiff reported she was uncomfortable around Harper. Miller depo. at 19. He does not recall the plaintiff reporting that Harper touched her.[2] Miller depo. at 20. Miller did call Harper and tell him to stop whatever he was doing. *Id.* at 21-22. Dale Gilliland, the Controller for Buccaneer, had no knowledge of this incident. Gilliland depo. at 54. However, Miller stated he would have brought the plaintiff's concerns to Gilliland's attention. Miller depo. at 24.

In September, 1998, the plaintiff states that Harper brought some bills to her desk, then began massaging her shoulders. Plaintiff depo. at 180-181. When she told him to stop,

---

[2]Harper denies this incident ever occurred. Harper depo. at 53.

he laughed and stuck his hand inside her blouse. *Id*. at 181. No one else saw this incident. *Id*.

The plaintiff reported this instance to Gilliland. Plaintiff depo. at 188; Gilliland depo. at 39-40. The plaintiff was informed by Miller that he had spoken to Dale Gilliland,, who spoke with Harper and told him to leave the plaintiff alone.[3] Plaintiff depo. at 175-176; affidavit of Gilliland at ¶ 2. The plaintiff knew she could file a formal complaint against Harper, but chose not to do so. Plaintiff depo. at 188-189. Gilliland reported to the plaintiff that Harper's bills would be handled through Barney Wilson, her supervisor, and that Harper was to stay away from her. *Id*. at 190. Gilliland asked the plaintiff if she had any further problems on two or three occasions and she said no, until the December, 1999 incident. Gilliland depo. at 40-41. The plaintiff also alleges that Harper touched her leg twice, both prior to the spring of 1998. Plaintiff depo. at 376-377. However, she "just slapped him away" rather that reporting these incidents. Plaintiff depo. at 317.

In between these two instances, the plaintiff asserts that Harper made rude comments to her. Plaintiff depo. at 181-182; exhibit 9 to Plaintiff depo. The comments did not continue into the year 2000. Plaintiff depo. at 191-193.

In September of 1999, Harper fell through the roof of plant 3, seriously injuring himself. Harper depo. at 19-20. He was off work until November, 1999, when he returned to work in a wheelchair. *Id*. at 48-52. Harper was then again taken off work in February, 2000 due to his injuries. *Id*. at 50-52.

---

[3]Harper stated he did rub her neck on this occasion, because the plaintiff was rubbing her neck and complaining of a headache. Harper depo. at 54. He asserts that the plaintiff did not tell him to stop. *Id*. at 55.

4

In December 1999, the plaintiff asserts that she was standing at Martha Wileman's cubicle talking to her, when Harper came up behind her, tugged on her shirt and "thumped" her "bottom." Plaintiff depo. at 199-201; exhibit 5 to Gilliland depo. When she turned around, she saw Harper going by the filing cabinets, laughing. Plaintiff depo. at 199. Harper was in his wheelchair. *Id.* The plaintiff told Harper she would knock him out of his wheelchair if he did that again. *Id.* at 201. The plaintiff reported the incident to Gilliland, who told her to file a complaint. *Id.* at 203; exhibit 8 to plaintiff depo; Gilliland depo. at 54-55. An investigation was undertaken, and the plaintiff was satisfied with the results. Plaintiff depo. at 204, 205. Harper denied touching the plaintiff intentionally. Gilliland depo. at 63-64; Harper depo. at 58, 60. The plaintiff thought the investigation and resulting disciplinary notice to Harper were fair, and that Buccaneer believed her and found in her favor. Plaintiff depo. at 230-231, 300, exhibit 12 to plaintiff depo. The plaintiff specifically told Gilliland that she did not want Harper fired. Gilliland depo. at 89.

The plaintiff thereafter became dissatisfied. Harper was instructed to stay away from her area, but would appear there when he was at Plant 1 to see the company nurse. Plaintiff depo. at 204-205; Harper depo. at 83-84. Harper also had to go into the office area at Plant 1 to see his boss, Charlie Dempsey. Harper depo. at 75. The plaintiff also asserts that Gilliland thereafter asked her if she fantasized about Harper and told her that Harper was a good man. Plaintiff depo. at 206, 262.

After this third incident, the plaintiff learned that Harper has been arrested for reckless endangerment, involving a woman named Sondra Tate, in 1996. Plaintiff depo. at 207;

Harper depo. at 13-14.[4] Gilliland checked into the incident after hearing about it from the plaintiff. Gilliland depo. at 48-49. This was after December, 1999. Gilliland depo. at 50. The plaintiff also filed criminal charges against Harper, which were dismissed. Plaintiff depo. at 208, 221. Harper made no further comments to the plaintiff of a sexual nature after the December 7, 1999 incident. *Id.* at 215-216. However, he did stare at her on ten to twelve occasions, the last one being in July, 2000, but this staring was not done in a sexual manner. *Id.* at 239-241, 248, 255-257, 392, 394, 399, 411, 414, 421, 426.

The plaintiff claims her lay off on August 3, 2000, was in retaliation for her complaints concerning Harper because two months before she was laid off, Gilliland told her that if she and Harper could not get along, one of them would not have a job much longer. Plaintiff depo. at 263-264, 291.[5] The plaintiff also stated that her layoff was retaliatory because she "upset the office" by complaining. *Id.* at 293, 312. She testified that she could not understand how Judy Barre, the other accounts payable employee, could do all of the work.[6] *Id.* at 288, 289. However, the plaintiff agreed that there was not enough work for two full-time employees in the accounts payable department. *Id.* at 291. She also stated that she always had a good working relationship with Gilliland. *Id.* at 295.

According to Teresa Nix, the director of human resources, no one else had complained about Harper. Nix depo. at 9, 13, 21-22. She heard no other complaints that he

---

[4] Harper was already employed with Buccaneer at the time of this charge, having been hired in 1994. Harper depo. at 21-22.

[5] At this point in time, Harper was still on full leave.

[6] Barre had been employed by Buccaneer since 1990.

harassed female employees, nor did she ever hear anything inappropriate. *Id.* at 26. Similarly, Gilliland had heard no other complaints about Harper prior to the time he was informed of the plaintiff's complaint by Miller. Gilliland depo. at 43-44. Nix only heard one complaint of Harper not staying away from the plaintiff after he was so instructed, which occurred in July, 2000. Nix depo. at 24. On that occasion, Harper had been instructed to see the nurse in Plant 1 concerning an affidavit for a lost workers' compensation check. *Id.* at 24-25.

The plaintiff filed an EEOC charge on August 16, 2000, alleging that the most recent date of discrimination was July 28, 2000. She alleged in the charge that during "most of my employment, I was sexually harassed and intimidated by Ray Harper..." Exhibit 17 to plaintiff's depo.

### Standard for Evaluating Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of genuine issues of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587.

"The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case .... A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir.2000), quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir.1991).

## Legal Analysis

*Hostile Environment*

Defendant Buccaneer asserts that the plaintiff's charge of discrimination was filed with the Equal Employment Opportunity Commission more than 180 days after the last date of harassment and thus her claims for hostile environment are barred as untimely. *See* 42 U.S.C. § 2000e-5(e). Clearly, as the EEOC charge was filed August 16, 2000, any event prior to February 18, 2000 would be time barred, unless the plaintiff can establish that the harassment was in the nature of a continuing violation of Title VII.

The plaintiff alleges that the last date of discrimination against her was July 28, 2000, several days before her last day of work for Buccaneer. *See* EEOC charge, Exhibit A to Plaintiff's complaint. Buccaneer argues that each incident of touching by Harper was before the year 2000, and thus well beyond the 180 day limitation contained in 42 U.S.C. § 2000e-5.

The 180-day time limit to file an EEOC charge is a statute of limitations to filing a lawsuit based on discrimination and the allegations of that charge. 42 U.S.C. § 2000e-5(e)(1). The language of that code section is mandatory, stating that a "charge under this section **shall** be filed within one hundred and eighty days after the alleged unlawful employment practice occurred.... (emphasis added)." Courts have interpreted this language to find that the 180 days is not jurisdictional and is subject to waiver, estoppel and equitable tolling. *Burnam v. Amoco Container Company*, 755 F.2d 893, 894 (11th Cir.1985) (addressing 180 day charge filing requirement under the ADEA); citing *Zipes v. TransWorld Airlines, Inc.*, 455 U.S. 385, 395 n. 11, 102 S.Ct. 1127, 1133 n.11, 71 L.Ed.2d 234 (1982).

However, the reasons for allowing equitable tolling of the 180 day filing requirement are not present in this case. Plaintiff testified in her deposition that she considered each of the touching incidents as harassment. Even if a reasonable person would feel likewise, the plaintiff had all the facts to support her charge of hostile environment sexual harassment well before August of 2000.

> The continuing violation doctrine is premised on "the equitable notion that the statute of limitations ought not to begin to run until facts supportive of the cause of action are or should be apparent to a reasonably prudent person similarly situated." *Alldread v. City of Grenada*, 988 F.2d 1425, 1432 (5th Cir.1993) (internal quotation marks omitted). This circuit and others have recognized this underlying premise in holding that "[a] claim arising out of an injury which is 'continuing' only because a putative plaintiff knowingly fails to seek relief is exactly the sort of claim that Congress intended to bar by the 180-day limitation period." *Roberts v. Gadsden Mem. Hosp.*, 850 F.2d 1549, 1550 (11th Cir.1988); *see also Carter v. West Publ'g Co.*, 225 F.3d 1258, 1264 (11th Cir.2000).

*Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1222 (11th Cir.2001). *See also United Airlines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977) (untimely allegations can be relevant background, but are also "merely .. unfortunate event[s] in history which [have] no present legal consequences").

The plaintiff also argues that, even though defendant Harper did not touch her after December, 1999, the hostile environment was a continuing violation of Title VII, carried through to the end of her employment with Buccaneer by numerous instances of Harper staring at her. These allegations cannot make her time-barred claims for harassment timely. The time limitation in which to file an EEOC charge for a hostile environment claim begins to run at the point the plaintiff knows she has been sexually harassed. *Hargett v. Valley Fed. Sav. Bank*, 60 F.3d 754, 760-761 (11th Cir.1995). This was substantially before February 18,

10

2000. This court finds that because plaintiff obviously had considered each of the "touching incidents" to be harassment, and further finds that the plaintiff failed to present evidence of a continuing violation, the plaintiff is barred by 42 U.S.C. § 2000e-5(e)(1) from bringing this action now. Each incident of touching by Harper was months apart, with no complaints by the plaintiff in between them. While the plaintiff does make vague allegations of Harper making suggestive statements, these allegations contain neither a time frame, nor any comment sufficient to be considered harassment. Furthermore, the plaintiff admits that Harper made no comments to her in the year 2000. Plaintiff depo. at 193. For the foregoing reasons, the plaintiff's claim for hostile environment is due to be dismissed.[7]

The court has also considered the plaintiff's allegations of hostile environment from February 18, 2001 through the end of her employment. This court can find no support for the plaintiff's argument that the staring, which the plaintiff herself admitted was not done in a sexual manner, can form the basis for a sexual harassment, hostile environment claim. *See Mendoza v. Borden*, 195 F.3d 1238, 1246-1249 (11th Cir.1999); *Gupta v. Florida Board of Regents*, 212 F.3d 571, 583-584 (11th Cir. 2000).

Plaintiff asserts that the staring constitutes a hostile environment. To establish a prima facie hostile environment claim, the plaintiff must show that the actions of the defendant altered the condition of the workplace, creating an objectively abusive and hostile atmosphere. *Edwards v. Wallace Community College*, 49 F.3d 1517, 1521 (11th Cir.1995).

---

[7]Even if this court found that the plaintiff's complaints of sexual harassment were timely, Buccaneer took steps to correct the problem almost immediately upon plaintiff's reporting Harper's behavior. The plaintiff testified that she was satisfied with Buccaneer's actions to discipline Harper and the instructions he was to stay away from her. *See Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1299 (11th Cir.2000).

11

If the workplace is permeated with "discriminatory intimidation, ridicule, and insult," that is sufficiently severe to "alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1995). As the Eleventh Circuit has observed, Title VII was not meant to be a federal "civility code." *Mendoza v. Borden,* 195 F.3d 1238, 1245 (11th Cir.1999).

The court having considered the plaintiff's allegations, and finding that she has not established an "objectively abusive and hostile atmosphere," based on her non-time barred complaints of staring, the court finds that Buccaneer in entitled to judgment in its favor as a matter of law on this claim.

*Retaliation*

The plaintiff alleges that she was laid off in August, 2000, in retaliation for her complaints of sexual harassment. In her deposition, the plaintiff stated only that she was retaliated against because her complaints "upset the office." Plaintiff depo. at 293, 312. However, the plaintiff agreed that there was not enough work for two full-time employees in the accounts payable department after Plant 3 was closed. *Id.* at 291. To make out a prima facie case for retaliation, the plaintiff must show 1) she engaged in protected activity, 2) she was subject to an adverse employment action and 3) the adverse action was causally related to her protected activity. *See Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir.2000). The court finds that the plaintiff has failed to show any evidence even suggesting that the adverse action, her layoff, was causally connected to her complaint about Harper.

The plaintiff was laid off according to a plan, adopted by Buccaneer, that considers solely job permanence and seniority for order of lay off. The plaintiff does not allege that the plan was adopted for a discriminatory purpose. She does not allege that Buccaneer closed a plant in order to lay her off. In fact, the plaintiff does not even allege that her supervisors' attitudes towards her changed after she made her December, 1999 complaint. Thus, at most, the plaintiff has produced evidence that she complained in December, 1999, was notified she would be laid off in June, 2000 and was subsequently laid off on August 3, 2000. The court can find no nexus in these facts. *See Maniccia v. Brown*, 171 F.3d 1364, 1369-70 (11th Cir.1999).

While the plaintiff does state that she was told, one time, two months before she was notified of the lay off, that if she could not get along with Harper, one of them would no longer work there, the court finds this comment insufficient to establish nexus. This is especially true in light of the fact that Harper was no longer working for Buccaneer, due to his injuries. Additionally, the plaintiff admits that once the second plant closed, not enough work to keep two full time employees busy would be generated. The court finds that the plaintiff has failed to show any pretext in Buccaneer's proffered reasons: that the lay off was necessitated by a plant closing and that the plaintiff was laid off pursuant to their lay off plan. Having considered the foregoing, the court finds that Buccaneer is entitled to summary judgment on the plaintiff's claim of retaliation.

*The State Law Claims*

While this court has supplemental jurisdiction over plaintiff's state law claims for negligent hiring, supervision, training and retention against Buccaneer and her state law

claims for assault and battery against defendant Harper pursuant to 28 U.S.C. § 1367(a), the court declines to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3). Because resolution of the remaining counts of the plaintiff's complaint depend on determinations of state law, those claims are best resolved by the Alabama courts. *See Baggett v. First National Bank of Gainesville,* 117 F.3d 1342, 1352-1353 (11th Cir.1997). The court notes that the plaintiff's state law claims will not be barred by the statutes of limitations in light of the tolling provisions of 28 U.S.C. § 1367(d).

## Conclusion

The court having considered the foregoing, and finding that the plaintiff has failed to establish any genuine issue of material fact sufficient to allow this case to proceed to trial on her claims under federal law, the court **ORDERS** that the defendant Buccaneer's motion for summary judgment on Counts I and V of the plaintiff's complaint is hereby **GRANTED**. These claims are **DISMISSED WITH PREJUDICE**. The plaintiff's state law claims, being Count X (negligent hiring, training, supervision, and retention against defendant Buccaneer) and Counts VI and VII (assault and battery against Harper), are **DISMISSED WITHOUT PREJUDICE**. Each party is to bear its own costs.

**DONE** and **ORDERED** this the ___13___ day of February, 2002.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE